UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
BUREAU OF CONSUMER FINANCIAL           )
PROTECTION,                            )
                                       )
        Plaintiff,                     )
                                       )
            v.                         )   C.A. No. 20-044 WES
                                       )
CITIZENS BANK, N.A.,                   )
                                       )
                                       )
        Defendant.                     )
_____)

## OPINION AND ORDER

Defendant Citizens Bank, N.A. moves to dismiss all counts of Plaintiff Bureau of Consumer Financial Protection's Complaint, arguing that the claims are time-barred, the case cannot proceed due to the separation of powers violation identified in Seila Law LLC v. CFPB, 140 S. Ct. 2183 (2020), and Plaintiff's funding structure is unconstitutional.  Defendant also argues that certain claims and prayers for relief should be dismissed because they are inadequately pled.  For the following reasons, Defendant's Motion to Dismiss, ECF No. 14, is DENIED.

I.   Background

On April 22, 2016, the Bureau of Consumer Financial Protection ("CFPB") issued a Civil Investigative Demand ("CID") to Citizens "to determine whether Citizens Bank engaged in, or was engaging in, unlawful acts and practices in connection with claims of

billing errors or fraud relating to credit cards, or the provisions of credit counseling information to customers . . . ." Tolling Agreement, Richman Decl. Ex. 6, ECF No. 15-6. The parties later signed agreements tolling all relevant statutes of limitations from February 23, 2017, to January 31, 2020. <u>See</u> Tolling Agreements, Richman Decl. Exs. 6-12, ECF Nos. 15-6 to 15-12.[1] On the penultimate day of tolling, the CFPB filed its Complaint, alleging that Citizens violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481 et seq., in its dealings with credit card customers.[2] <u>See</u> Compl., ECF No. 1. The alleged violations began in 2010 or earlier and ended, depending on the violation, sometime in 2015 or 2016. <u>See</u> <u>id.</u> ¶¶ 15, 20, 22, 23. Citizens moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the

---

[1] Although the Complaint does not reference these agreements, Citizens attached them to its Motion to Dismiss, and neither party disputes their authenticity. <u>See</u> Tolling Agreements, Richman Decl. Exs. 6-12, ECF Nos. 15-6 to 15-12.

[2] Counts I and II allege that when some credit cardholders reported unauthorized use on their cards, Citizens automatically denied the claims if the customers did not complete a "Fraud Affidavit" averring to their claims at the penalty of perjury. Compl. ¶¶ 31-38. Counts III and IV allege that Citizens failed to refund certain finance charges and fees that accrued as the result of charges later deemed to be unauthorized. <u>Id.</u> ¶¶ 39-46. Counts V and VI allege that Citizens failed to provide required written notices of acknowledgment and denial in response to written billing error claims submitted by cardholders. <u>Id.</u> ¶¶ 47-54. Counts VII and VIII allege that Citizens failed to refer cardholders to credit counseling, as required by law. <u>Id.</u> ¶¶ 55-62.

Federal Rules of Civil Procedure, arguing (1) the claims are time-barred; (2) the CFPB is unconstitutional in multiple ways, thus requiring dismissal of the case; and (3) certain claims and prayers for relief are inadequately pled.  See Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") 10, 15, 23, ECF No. 14-1.

To understand the Bank's constitutional argument, greater context is needed.  Prior to and during this case, the CFPB has been in peril.  The brainchild of then-Professor and now-Senator Elizabeth Warren, the CFPB was created in the wake of the "Great Recession" as part of the Dodd-Frank Act.  See Seila Law, 140 S. Ct. at 2192; id. at 2244 (Kagan, J., concurring in part). Professor Warren envisioned an agency led by an independent board, like that of the Federal Reserve.  See PHH Corp. v. CFPB, 839 F.3d 1, 6 (D.C. Cir. 2016) ("PHH I"), reh'g en banc granted, order vacated (Feb. 16, 2017), on reh'g en banc, 881 F.3d 75 (D.C. Cir. 2018) ("PHH II") (citation omitted).  But in the end, the CFPA, which was passed as part of the Dodd-Frank Act, established the CFPB with just a single Director, appointed for a five-year term and removable only for inefficiency, neglect, or malfeasance.  See 12 U.S.C. § 5491(c)(1), (3).

In 2017, the Department of Justice argued in a case challenging the CFPA that this for-cause removal provision was unconstitutional.  See Brief for United States as Amicus Curiae 23, PHH II (No. 15-1177), 2017 WL 1035617.  Lower federal courts,

however, concluded otherwise.  See PHH II, 881 F.3d at 77; CFPB v. Seila Law LLC, 923 F.3d 680, 683 (9th Cir. 2019), vacated and remanded, 140 S. Ct. 2183 (2020).  One of those cases made its way to the Supreme Court, where the CFPB relented, adopting the position of the Department of Justice.  See Seila Law, 140 S. Ct. at 2195.  In September 2019, CFPB Director Kathleen Kraninger also sent a letter to Congress stating that the for-cause removal provision was unconstitutional.  See Letter from Director Kathleen Kraninger to Speaker Nancy Pelosi 1 (Sept. 17, 2019), ECF No. 15-3.  She maintained, however, that the provision was severable and that the CFPB could thus continue to operate with her at the helm. See id. at 2-3.  The Supreme Court agreed.  See Seila Law, 140 S. Ct. at 2192, 2197.  The Court declined, however, to answer whether post-severance ratification of an enforcement action by the Director would cure the constitutional infirmity.  See id. at 2208.

Shortly thereafter, Director Kraninger ratified the agency's action in this case.  See Kraninger Decl. 2, ECF No. 26-1.  This Court requested supplemental briefing regarding the impact of Seila Law, and specifically the effectiveness (or not) of the ratification; the Court heard oral argument on October 20, 2020.

II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (citation and quotations omitted). In addition to the Complaint, the Court may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to the plaintiffs' claims; [and] documents sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citation and quotations omitted).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the legal standard is "similar to that accorded a dismissal for failure to state a claim[.]" Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). The Court must grant the motion to dismiss "[i]f the well-pleaded facts, evaluated in that generous manner, do not support a finding of federal subject-matter jurisdiction." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Under Rule 12(b)(1), the Court has wider latitude to consider materials outside the pleadings. See Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (citing Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)).

III. Discussion

    1.   Statute of Limitations

    The CFPB is tasked with enforcing nineteen consumer protection statutes, including the CFPA (the CFPB's enabling statute) and TILA.  See 12 U.S.C. § 5481(12) and (14); see also id. § 5581.  Counts I, III, and V are brought under TILA, its implementing Regulation Z, and the Official Staff Interpretations of Regulation Z ("staff commentary").  Counts II, IV, and VI are brought based on the same conduct alleged in Counts I, III, and V, respectively, but are pled under the CFPA.  See 15 U.S.C. § 1607(b) ("[A] violation of any requirement imposed under [TILA] shall be deemed to be a violation of [the CFPA].").

    TILA imposes various restrictions on the ways in which lenders interact with their customers.  The act also contains two provisions providing for enforcement of those restrictions:  15 U.S.C. §§ 1607 and 1640.  Citizens contends that the CFPB's claims here are governed by § 1640 and its one-year statute of limitations.  See Mot. to Dismiss 15.  Conversely, the CFPB argues that the claims are brought pursuant to § 1607, which states that TILA compliance shall be enforced under Subtitle E of the CFPA.  See Pl.'s Opp'n 7-8, ECF No. 19.  Subtitle E, in turn, provides that claims must be brought within three years of their discovery by the CFPB.  12 U.S.C. § 5564(g)(1).

The Complaint alleges that the unlawful conduct began (at the latest) in 2010 and ended sometime between early 2015 and early 2016.  See Compl. ¶¶ 15, 20, 22, 23.  Per the tolling agreements, all relevant statutes of limitations were tolled from February 23, 2017, until January 31, 2020.  See Tolling Agreements, Richman Decl. Exs. 6-12, ECF Nos. 15-6 to 15-12.  Thus, if Citizens is correct, and a one-year deadline applies, all the claims were time-barred prior to the start of the tolling agreements, and the entire case must be dismissed.  Conversely, if the CFPB is correct that a three-year discovery period applies, the statute of limitations had not expired at the time that the tolling agreements were signed.  Assuming that the tolling agreements were valid (more on this in Section III(2)(b)), none of the claims would be time-barred.[3]  For the following reasons, the Court concludes that the three-year limit controls.

>    a.   Statutory Language

"[S]tatutory interpretation turns on the language itself, the specific context in which that language is used, and the broader

---

[3] To be fully accurate, if the CFPB had discovered some of the violations prior to 2015, some of the claims could be time-barred in part.  But Citizens makes no such assertion.  Moreover, because the date of discovery is not contained within the Complaint, any dispute regarding the date of discovery must be left for summary judgment or trial.  See Alvarez-Mauras v. Banco Pop. of Puerto Rico, 919 F.3d 617, 628 (1st Cir. 2019) (stating that statute of limitations can be basis for a motion to dismiss "as long as the facts [are] clear on the face of the plaintiff's pleadings" (citation and quotations omitted)).

context of the statute as a whole." Nken v. Holder, 556 U.S. 418, 426 (2009) (citation and quotations omitted).  In the absence of ambiguity or absurdity, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Carcieri v. Salazar, 555 U.S. 379, 392-393 (2009) (citation and quotations omitted).

Section 1640, titled "Civil liability," provides that "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ."  15 U.S.C. § 1640(a).  "[A]ny action under this section may be brought . . . within one year . . . of the violation . . . ."  Id. § 1640(e).  An enforcement action may also be brought by the appropriate state attorney general within three years of the violation.  Id.  "The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under [§ 1607,]" and the federal agency may intervene.  Id.

Section 1607, titled "Administrative enforcement," provides: "Enforcing Agencies[.]  Subject to subtitle B of the [CFPA], compliance with the requirements imposed under this subchapter shall be enforced under [various statutes, including] . . . subtitle E of the [CFPA], by the [CFPB], with respect to any person subject to this subchapter."  Id. § 1607(a).  "For the purpose of the exercise by [the CFPB] of its powers under [the CFPA], a

violation of any requirement imposed under this subchapter shall be deemed to be a violation of [the CFPA]." Id. § 1607(b).

Subtitle E of the CFPA, as referenced in § 1607, provides a general cause of action for the CFPB: "If any person violates a Federal consumer financial law, the [CFPB] may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal or equitable relief . . . ." 12 U.S.C. § 5564(a). However, "[a]n action arising under [the CFPA] does not include claims arising solely under enumerated consumer laws." Id. § 5564(g)(2)(A).[4] "Except as otherwise permitted by law or equity, no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation." Id. § 5564(g)(1).

b.   Statutory Interpretation

The CFPB argues that § 1640 controls actions brought by private individuals, while § 1607 governs actions brought by federal agencies (whether in court or otherwise). See Pl.'s Opp'n 7-16. Because § 1607 states that such actions are brought under Subtitle E of the CFPA, the CFPB maintains that Subtitle E's three-year statute of limitations applies. Pl.'s Opp'n 8-9. Citizens contends that TILA's division of labor falls along a different

---

[4] The counts brought under the CFPA are pled under 12 U.S.C. § 5536(a)(1)(A), which prohibits a "covered person" or "service provider" from violating a federal consumer financial law. See 12 U.S.C. § 5536(a)(1)(A). Due to the additional element of the defendant's status as a covered person or service provider, these counts do not arise solely under enumerated consumer laws.

axis:  § 1640 controls all actions brought in court, including by
the CFPB, while § 1607 governs only administrative actions.  <u>See</u>
Mot. to Dismiss 15-22.  Therefore, Citizens maintains that the
one-year limitation in § 1640 applies.  <u>See id.</u>

Several factors weigh in the CFPB's favor.  First, § 1640
specifically provides that a creditor who violates TILA "with
respect to any <u>person</u> is liable to such <u>person</u>[.]"  15 U.S.C. §
1640(a) (emphasis added).  Section 1640 contains no other language
specifically creating a cause of action, except for the language
that allows state attorneys general to bring suit and federal
agencies to intervene in a state attorney general's action.  <u>See</u>
<u>id.</u> § 1640(e).  Therefore, the plain language indicates that § 1640
only governs cases brought by individuals or state attorneys
general.  Indeed, the Courts of Appeals for the Third and Eighth
Circuits have each referred to § 1640 as creating a "private right
of action."  <u>Vallies v. Sky Bank</u>, 591 F.3d 152, 156 (3d Cir. 2009);
<u>Citizens State Bank of Marshfield, Mo. v. Fed. Deposit Ins. Corp.</u>,
751 F.2d 209, 217 (8th Cir. 1984).[5]

---

[5] Citizens asserts that the Eighth Circuit "appl[ied] Section
1640's limitations against the FDIC."  Mot. to Dismiss 17 (citing
<u>Citizens State Bank of Marshfield, Mo. v. FDIC</u>, 751 F.2d 209, 218
(8th Cir. 1984)).  True, but not for reasons that help Citizens.
Relying on § 1640's "private right of action[,]" the court held
that TILA created no mechanism for administrative agencies to seek
restitution, not that § 1640 governed the enforcement proceeding
or that the one-year limitation precluded relief.  <u>See</u> <u>Citizens</u>
<u>State Bank</u>, 751 F.2d at 217.  Of course, the CFPA subsequently
gave the CFPB authority to seek restitution and other forms of

Surveying this statutory landscape, the District of Southern Florida "conclude[d] that [§ 1640] does not apply to administrative actions" and that the CFPA's three-year limitation instead governs the CFPB's civil enforcement actions.  CFPB v. Ocwen Fin. Corp., No. 17-80495, 2019 U.S. Dist. LEXIS 152336, at *74 (S.D. Fla. Sept. 5, 2019).  The court in FTC v. CompuCredit Corp., No. 1:08-CV-1976-BBM-RGV, 2008 WL 8762850 (N.D. Ga. Oct. 8, 2008), was faced with a similar situation.  There, the Federal Trade Commission ("FTC") brought an enforcement action under both the Fair Debt Collection Practices Act ("FDCPA") and the Federal Trade Commission Act ("FTC Act").  See id. at *10.  The court ruled that a certain section of the FDCPA did not govern the FTC's actions because that section was limited "to actions by 'consumers' against 'debt collectors'" (similar to § 1640's use of "person").  Id. (quoting 15 U.S.C. § 1692k(d) and citing Weiss v. Regal Collections, 385 F.3d 337, 341 (3d Cir. 2004), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016)).  Instead, the court ruled that the FTC's cause of action came from 15 U.S.C. § 1692l(a), which - using language nearly identical to § 1607 - allows the FTC to enforce violations of the FDCPA and

relief for violations of TILA.  See 12 U.S.C. § 5565(a).  Thus, Citizens State Bank actually provides mild support for the CFPB's position that § 1640 does not govern civil enforcement actions brought by administrative agencies.

deems those violations to be violations of the FTC Act.[6]  See id.
Thus, the relevant statute of limitation was contained within the
FTC Act, not the FDCPA.  See id.; see also CFPB v. Weltman, Weinberg
& Reis Co., L.P.A., No. 1:17 CV 817, 2017 WL 4348916, at *7 (N.D.
Ohio Sept. 29, 2017) ("find[ing] the reasoning in CompuCredit to
be persuasive").  This logic applies equally here and supports the
CFPB's position.

    On the other hand, Citizens points to CFPB v. ITT Educ.
Servs., Inc., 219 F. Supp. 3d 878 (S.D. Ind. 2015) ("ITT"), in
which the court held that the one-year limitation period in § 1640
applied to the CFPB's civil actions:

> First, we see no persuasive evidence that 15 U.S.C. §
> 1640 governs only private civil actions.  The provision
> itself does not exclude actions in which a government
> agency is the plaintiff, and in fact it explicitly
> recognizes the possibility of intervention by federal
> agencies in civil suits initiated by private parties.
> 15 U.S.C. § 1640(e)(1).  Second, agency interpretations
> support the conclusion that the agency enforcement
> powers contemplated by Section 1607 are administrative

_____

[6] Compare 15 U.S.C. § 1692l(a) ("[The FTC] shall be authorized
to enforce compliance with this subchapter, except to the extent
that enforcement of the requirements imposed under this subchapter
is specifically committed to another Government agency . . . ,
subject to subtitle B of the [CFPA].  For purpose of the exercise
by the [FTC] of its functions and powers under the [FTC ACT,] a
violation of this subchapter shall be deemed an unfair or deceptive
act or practice in violation of that Act.") with id. § 1607(a)
("Subject to subtitle B of the [CFPA], compliance with the
requirements imposed under this subchapter shall be enforced under
. . . subtitle E of the [CFPA], by the [CFPB] . . . .") and id.
§ 1607(b) ("For the purpose of the exercise by [the CFPB] of its
powers under [the CFPA], a violation of any requirement imposed
under this subchapter shall be deemed to be a violation of a
requirement imposed under [the CFPA].").

in nature, and are separate from any authorization to
file civil suits.   In interpreting its enforcement
authority under TILA, the Comptroller of the Currency
stated that "[t]he Comptroller's administrative
authority to enforce compliance with [TILA] and
Regulation Z . . . [is] based on [15 U.S.C. § 1607, which
is] separate from and independent of the civil liability
provisions of . . . [TILA]."  OCC Interpretive Letter,
Fed. Banking L. Rep. 85,040 (Oct. 6, 1977).  Similarly,
the Federal Reserve's interpretive manual for Regulation
Z states that "<u>regulatory administrative</u> enforcement
actions . . . are not subject to the one-year statute of
limitations."  Fed. Reserve Board Consumer Compliance
Handbook, Regulation Z at 57 (Nov. 2013) (emphasis
added).

Id. at 922–23 (some citations omitted).

However, this Court does not find the agency interpretations
on which the ITT court relied to be persuasive.  The court quoted
a 1977 letter from the Comptroller of the Currency to support the
proposition that § 1607 governs only administrative actions, not
court actions, but the next (unquoted) sentence in the letter
implies the very opposite:  "[W]e note that although individual
borrowers are restricted . . . by a one-year statute of limitations
the Comptroller is not restricted by any statute of limitations
under [TILA]."  OCC Interpretive Letter, Fed. Banking L. Rep.
85,040, 1977 WL 23261, at *1 (Oct. 6, 1977).  The ITT court also
relied on a passage from the Federal Reserve's Regulation Z
handbook from 2013 stating that the one-year limitation does not
apply to regulatory administrative enforcement actions (which by
implication do not include court actions).  See 219 F. Supp. 3d at
923.   But the 2015 version of the handbook makes no such

distinction, simply stating that "actions brought by regulators[] are not subject to the general one-year statute of limitations." See Fed. Reserve Board Consumer Compliance Handbook, Regulation Z at 82 (Nov. 2015).  To the extent that the Federal Reserve in 2013 may have interpreted § 1607 to apply only to non-court proceedings, its interpretation has changed.  Thus, much of the ITT court's reasoning is unconvincing.

Citizens also points to the now-vacated decision in PHH I, but the case is largely inapposite.  See Mot. to Dismiss 16, 22. In PHH I, the parties disagreed regarding the applicable statute of limitations when the CFPB sues under the Real Estate Settlement Procedures Act ("RESPA").  See 839 F.3d at 52.  The RESPA provides a one-year statute of limitations for cases brought by private individuals and a three-year statute of limitations for "actions" brought by the CFPB.  Id. (citing 12 U.S.C. § 2614).  Unlike here, the parties took for granted that the CFPB was not governed by the one-year limitation for private parties.  See id.  Instead, the question was whether the three-year limitation applied solely to the CFPB's civil actions in court, or if it also governed the CFPB's administrative enforcement actions.  See id.  As a matter of statutory interpretation, the court determined that the section applied to both types of actions.  See id.

Citizens tries to bolster its argument with the following statement from PHH I: "for actions the CFPB brings in court under

any of the 18 pre-existing consumer protection statutes, the CFPB may only 'commence, defend, or intervene in the action in accordance with the requirements of that provision of law, as applicable.'" Id. at 51 n.28 (quoting 12 U.S.C. § 5564(g)(2)(B)). But this passage does not shed any light on the primary issue here: whether TILA contains a statute of limitations applicable to actions brought by the CFPB. If TILA does, that statute of limitations would clearly control the TILA counts, and would likely also control the derivative CFPA counts. But the Court concludes that TILA does not contain a statute of limitations applicable to the CFPB, so PHH I is largely beside the point.

In sum, TILA's plain language dictates that § 1640 governs civil suits brought by individuals and state attorneys general, while § 1607 provides the cause of action for federal enforcement agencies such as the CFPB. The cases mustered in opposition by Citizens are either inapt or unconvincing. Because § 1607 does not contain a statute of limitations, instead stating that cases brought by the CFPB "shall be enforced under . . . subtitle E of the [CFPA]," this action is governed by subtitle E's requirement that cases be brought within three years of discovery by the CFPB. 15 U.S.C. § 1607(a)(6); see also 12 U.S.C. § 5564(g)(1). As explained below, with the tolling agreements in the mix, the lawsuit was filed and ratified before the expiration of the three-year period.

2.   <u>Seila Law</u> and Ratification

Citizens next argues for dismissal based on the Supreme Court's recent holding that the CFPA unconstitutionally restricts the ability of the President to remove the CFPB Director.   <u>See Seila Law</u>, 140 S. Ct. at 2197; <u>see generally</u> Def.'s Suppl. Br. in Supp. of Mot. to Dismiss ("Def.'s Suppl. Br."), ECF No. 33.   Based on this holding, Citizens contends that the CFPB lacked Article II authority to bring this suit in January 2020.   <u>See</u> Def.'s Suppl. Br. 16-17.   Citizens also argues that the CFPB lacked standing as an executive agency, thereby depriving this Court of Article III jurisdiction.   <u>See</u> <u>id.</u>

The Constitution grants the President the power to "take Care that the Laws be faithfully executed."   Art. II, § 3.   Therefore, he (and someday she) generally has "the authority to remove those who assist him in carrying out his duties."   <u>Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.</u>, 561 U.S. 477, 513-14 (2010). The CFPA, however, restricts the reasons for which the CFPB Director can be removed.   <u>See</u> 12 U.S.C. § 5491(c)(3).   In <u>Seila Law</u> the Supreme Court held that "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers."   140 S. Ct. at 2197.   Nonetheless, the Supreme Court held that "the CFPB Director's removal protection is severable from the other statutory provisions bearing on the CFPB's authority."   <u>Id.</u> at

2192.  And, thus, "[t]he agency may therefore continue to operate,
but its Director . . . must be removable by the President at will."
Id.  In support of its decision to sever the provision rather than
strike down the entire CFPA, the Court noted that dismantling the
CFPB and shifting its responsibilities back to the agencies that
had previously enforced consumer protection laws "would trigger a
major regulatory disruption and would leave appreciable damage to
Congress's work in the consumer-finance arena."  Id. at 2210.

But what comes of pending enforcement actions?  The Court
declined to answer:

> The Government [argues] that the [CID], though initially
> issued by a Director unconstitutionally insulated from
> removal, can still be enforced on remand because it has
> since been ratified by an Acting Director accountable to
> the President.  The parties dispute whether this alleged
> ratification in fact occurred and whether, if so, it is
> legally sufficient to cure the constitutional defect in
> the original demand.  That debate turns on case-specific
> factual and legal questions not addressed below and not
> briefed  here.   A  remand  .  .  .  is  therefore  the
> appropriate course . . . .

Id. at 2208.[7]

Although the Supreme Court did not resolve this issue, it
clearly framed the question as one of ratification.  The doctrine
of ratification stems from agency law.  See FEC v. NRA Political
Victory Fund, 513 U.S. 88, 98 (1994).  The basic idea is that a

---

[7] In that proceeding, the CFPB had sued to enforce compliance
with a CID.  See Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2194
(2020).  Though the procedural posture was different from that
here, the constitutional issues were much the same.

legitimate agent (here, the CFPB Director, post-Seila Law) can ratify a decision made previously by an improper agent (the Director, pre-Seila Law) on behalf of a principal (the CFPB itself). In essence, ratification is the act of making a decision nunc pro tunc to the time of the original, improperly made decision. For a ratification to be effective, three basic requirements must be met. "First, the ratifier must, at the time of ratification, still have the authority to take the action to be ratified. Second, the ratifier must have full knowledge of the decision to be ratified. Third, the ratifier must make a detached and considered affirmation of the earlier decision." Advanced Disposal Servs. E., Inc. v. NLRB, 820 F.3d 592, 602 (3d Cir. 2016).

Here, the parties dispute the validity of two CFPB actions: (a) the decision to file the civil action in January 2020, and (b) the decision to enter into the tolling agreements from 2017 to 2020. For the reasons that follow, the Court concludes that (a) the ratification of the civil action was sufficient to remedy the harm caused by the Director's unconstitutional insulation, and (b) the tolling agreements were not contaminated by the unconstitutional removal provision and thus do not require ratification.

a.    Ratification of the Civil Action

Two days after the decision in Seila Law was issued, Director Kraninger ratified this lawsuit. See Kraninger Decl. 2, ECF No.

18

26-1.  Citizens argues that this ratification did not cure the
constitutional infirmity underlying this enforcement action.  See
generally Def.'s Suppl. Br.

　　　Though the Seila Law decision is still young, the two courts
to address this issue thus far have determined that a CFPB
enforcement action pending at the time of Seila Law may continue
if the action is ratified by the Director.  See CFPB v. Chou Team
Realty LLC, No. 8:20-cv-00043, slip op. at 4 (C.D. Cal. Aug. 21,
2020) ("Any constitutional deficiency regarding the removability
issue at the time the Complaint was filed was cured by [severance]
coupled with [ratification]."); Mot. Hr'g Tr. 67, CFPB v. Law
Offices of Crystal Moroney, P.C., No. 7:20-cv-03240 (S.D.N.Y. Aug.
19, 2020) ("[T]he more efficient and sensible course seems to be
to take the ratification of this prior decision at face value and
treat that as the adequate remedy for the constitutional violation
bearing in mind the discretion the judiciary employs in the
selection of remedies." (citation and quotations omitted)).  For
the following reasons, this Court agrees; ratification is a
sufficient remedy for the constitutional violation.   Thus,
dismissal is unnecessary.

　　　　　　　i.  Structural Infirmity

　　　The Bank's primary contention is that ratification is
insufficient because the constitutional defect identified in Seila
Law was structural.  See Def.'s Suppl. Br. 6-8, 11.  Under the

generally accepted principles of ratification, an agent cannot ratify a decision unless the principal had capacity to take the action at the time of the original decision. See CFPB v. Gordon, 819 F.3d 1179, 1191 (9th Cir. 2016) (citing Restatement on Agency (Second) § 84(1)).[8]  Due to this purported structural defect, Citizens argues that the CFPB (as principal) lacked capacity to file the Complaint in January 2020, so the Director (as agent) cannot now ratify it.  See Def.'s Suppl. Br. 11.  Relatedly, Citizens contends that this purported structural defect stripped the CFPB of its executive branch authority and, in turn, its standing to bring this suit.  See id. at 16-17.  Furthermore, Citizens argues that if the action can be ratified, the Bank is left with no remedy for being subjected to the enforcement decision of an unconstitutionally insulated director.  See id. at 6-7.

As Citizens notes, the Court in Seila Law "[held] that the structure of the CFPB violates the separation of powers[.]"  Id. at 11 (quoting Seila Law, 140 S. Ct. at 2192).  But the Court also expressed concern that striking down the entire CFPA "would trigger a major regulatory disruption and would leave appreciable damage

_____

[8] Due to the Court's determination, explained below, that the constitutional defect primarily affected the directorship, not the CFPB as a whole, the Court need not delve into the more flexible rule from the Third Restatement, which "advises that a ratification is valid even if the principal did not have capacity to act at the time . . . ."  CFPB v. Gordon, 819 F.3d 1179, 1191-92 (9th Cir. 2016) (citing Restatement on Agency (Third) § 4.04 cmt. b).

to Congress's work in the consumer-finance arena." <u>Seila Law</u>, 140 S. Ct. at 2210. Condemning all past (or even just all pending) CFPB actions, without the possibility of ratification, would have a similar effect. Moreover, after crossing out the removal restrictions, the Court concluded that "the CFPB may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." <u>Id.</u> at 2207-08. Had the structure of the CFPB as a whole been unconstitutional, the excision of the for-cause provision would not have fixed the problem. Bigger changes would have been required. This Court thus interprets the Supreme Court's use of the word "structure" to refer to attributes of the CFPB's top brass, not deeper issues with the authority or makeup of the Bureau as a whole.

In <u>Gordon</u>, the former CFPB Director's recess appointment was deemed unconstitutional because it was made without the advice and consent of the Senate. <u>See</u> 819 F.3d at 1185-86. The enforcement action at issue had been initiated while the Director's appointment was invalid, but following his subsequent confirmation by the Senate he ratified all his previous actions. <u>See</u> <u>id.</u> The Court of Appeals for the Ninth Circuit held that "Congress authorized the CFPB to bring the action in question. Because the CFPB had the authority to bring the action at the time [the case was initiated], [the Director's] ratification, done after he was

21

properly appointed as Director, resolve[d] any Appointments Clause deficiencies." Id. at 1192 (citations omitted).

Similarly, in FEC v. Legi-Tech, Inc., 75 F.3d 704 (D.C. Cir. 1996), the court ruled that the newly reconstituted Federal Election Commission ("FEC") could ratify the enforcement action of its predecessor, whose make-up had violated separation of powers. See id. at 708. The court rejected the argument made here by Citizens: "Legi-Tech's contention that the FEC's reconstitution and ratification is not an effective remedy because separation of powers is a 'structural' constitutional defect that necessarily voids all prior decisions is overstated." Id. "To be sure, Legi-Tech was prejudiced . . . when the FEC brought suit. But . . . the relevant issue is the degree of continuing prejudice now, after the FEC's reconstitution and ratification, and whether that degree of prejudice - if it exists - requires dismissal." Id.

Lastly, in PHH I the court held the CFPA's removal restrictions to be unconstitutional. See 839 F.3d at 39. Though the opinion was vacated, its reasoning was largely upheld in Seila Law. See 140 S. Ct. at 2192; PHH II, 881 F.3d at 77. Of particular relevance here, then-Judge Kavanaugh stated that the "constitutional ruling w[ould] not halt the CFPB's ongoing operations or the CFPB's ability to uphold the [district court judgment] against PHH . . . ." PHH I, 839 F.3d at 39.

The principles articulated in Gordon, Legi-Tech, and PHH I fully apply here. "Constitutional litigation is not a game of gotcha against Congress" or the CFPB. Barr v. Am. Ass'n. of Political Consultants, Inc, 140 S. Ct. 2335, 2351 (2020). Because the constitutional deficiency identified in Seila Law concerned only the CFPB's directorship, and because the deficiency was found to be severable, the CFPB was never divested of its power to act as a principal and its standing as a plaintiff.

ii.  Unclean Hands

Next, Citizens argues that "[d]ismissal is the proper remedy where, as here, federal officers discharge their duties in a way that is known to them to violate the United States Constitution." Def.'s Suppl. Br. 2 (citation and quotations omitted). Because ratification is an equitable doctrine, the Court has discretion to balance the interests at stake. See Advanced Disposal, 820 F.3d at 603.

Citizens relies on the fact that in September 2019, while Seila Law was pending before the Supreme Court, the Director sent a letter to Congress, adopting the position that the removal provision violated the Constitution, but concluding that the CFPB could continue to operate because the removal provision was severable from the rest of the CFPA. See Letter from Director Kathleen Kraninger to Speaker Nancy Pelosi 2-3 (Sept. 17, 2019), ECF No. 15-3. As it turned out, Director Kraninger was right.

"[N]othing in the <u>Seila Law</u> decision . . . suggests that the [CFPB]
was engaged in some sort of bad conduct requiring [an] overly broad
remedy to deter that conduct going forward.  It was the [CFPB's]
position that prevailed in <u>Seila Law</u>, that the removal provision
is unconstitutional but severable."  Hr'g Tr. 40, <u>Law Offices of
Crystal Moroney</u>, No. 7:20-cv-03240.  Neither the Director nor the
CFPB engaged in nefarious behavior; rather, they plugged away at
the mission entrusted to them by Congress, making the best of a
flawed statutory scheme.  Their hands are clean.

### iii. Reasoned Judgment

Third, Citizens argues that the speed at which the Director
ratified the decision demonstrates its invalidity.  <u>See</u> Def.'s
Suppl. Br. 27-30.  Indeed, for a ratification to be effective,
"the ratifier must make a detached and considered affirmation of
the earlier decision."  <u>Advanced Disposal</u>, 820 F.3d at 602.
However, "absent a contention that [the decision-maker was]
actually biased[,]" the Court cannot second-guess such a decision.
<u>Legi-Tech</u>, 75 F.3d at 709.  Thus, courts have consistently upheld
ratifications even under circumstances indicating a less-than-
thorough review.  <u>See</u> <u>Advanced Disposal</u>, 820 F.3d at 604 (holding
that where ratifier "claims that it specifically considered the
relevant supporting materials[, and opposing party] d[id] not
present any evidence suggesting otherwise[, a court] can therefore
presume that [ratifier] appropriately reconsidered[] its earlier

24

[decision]" (citation omitted)); Gordon, 819 F.3d at 1186 (upholding ratification of "any and all actions" taken during six-month period); Legi-Tech, 75 F.3d at 709 (refusing to "examine the internal deliberations" leading to ratification even though review may have been "nothing more than a 'rubberstamp'").

Here, Director Kraninger declared that she "considered the basis for the [CFPB]'s decision to file the . . . lawsuit." Kraninger Decl. 2, ECF No. 26-1. Other than the truncated review period, there is no reason to doubt her. The Court finds that the ratification was the product of a reasoned judgment.

iv. Sufficient Remedy

"In the specific context of the President's removal power, [it is] sufficient that the challenger 'sustain[s] injury' from an executive act that allegedly exceeds the official's authority." Seila Law, 140 S. Ct. at 2196 (quoting Bowsher v. Synar, 478 U.S. 714, 721 (1986)). Therefore, although the preceding three arguments are unavailing, Citizens did suffer an injury of some sort. To determine the upshot of this injury, the Court must examine "the degree of continuing prejudice [following] ratification, and whether that degree of prejudice . . . requires dismissal." Legi-Tech, 75 F.3d at 708.

In Collins v. Mnuchin, the Fifth Circuit held that the Director of the Federal Housing Finance Agency ("FHFA") was unconstitutionally insulated from removal. 938 F.3d 553, 587 (5th

Cir. 2019), cert. granted, 19-422, 2020 WL 3865248 (U.S. July 9, 2020), and cert. granted, 19-563, 2020 WL 3865249 (U.S. July 9, 2020).   In considering the proper remedy, the court took judicial notice of the fact that Presidents Obama and Trump had each "picked their own FHFA directors, allaying concerns that the removal restriction prevented them from installing someone who would carry out their policy vision." Id. at 594.  Same here.  Following his nomination by President Obama, CFPB Director Richard Cordray served until President Trump's first year in office, at which point he resigned, leaving Leandra English to temporarily take the reins. See English v. Trump, 279 F. Supp. 3d 307, 311 (D.D.C. 2018), appeal dismissed, 18-5007, 2018 WL 3526296 (D.C. Cir. July 13, 2018).   But President Trump installed Mick Mulvaney as Acting Director, and after a standoff with Ms. English, Mr. Mulvaney prevailed.  See id. at 314-15, 337.  President Trump subsequently nominated Director Kraninger, who was confirmed by the Senate in 2018.  See Kraninger Decl. 1, ECF No. 26-1.

The Bank's injury is that the President – but for the statutory restrictions - might have removed the Director in order to reverse her enforcement decision in this case, or that a Director fully accountable to the President might have behaved differently.   Ratification resolves those possibilities.   Despite the President's newly unencumbered power of removal, Director

Kraninger remains in charge, and she ratified the decision to bring the instant case.

Moreover, the type of constitutional infirmity here is even less acute than that in Gordon and Legi-Tech, Appointments Clause cases in which ratification was deemed sufficient. See Gordon, 819 F.3d at 1192; Legi-Tech, 75 F.3d at 709.  In those cases, "officers were vested with authority that was never properly theirs to exercise[,]" whereas removal cases deal with officials who "are duly appointed by the appropriate officials and exercise authority that is properly theirs." Collins, 938 F.3d at 593 (citation and quotations omitted).  Therefore, while Appointments Clause violations sometimes require a "backward-looking remedy", removal restrictions generally do not. Id. at 596 (Duncan, J., concurring) (citing Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018) and Free Enterprise Fund, 561 U.S. at 508–09).  Dismissal with prejudice would be overkill, and dismissal without prejudice would be pointless; the Bureau could just bring the action again. See Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision, 139 F.3d 203, 214 (D.C. Cir. 1998) (noting that "redoing the . . . proceedings would bring about the same outcome").

On the other hand, Citizens points to Lucia, in which the Court stated that "Appointments Clause remedies are designed . . . to create incentives to raise Appointments Clause challenges." 138 S. Ct. at 2055 n.5 (citation and quotations omitted).  But

that principle is only marginally applicable here.  First, the instant case does not involve the Appointments Clause; as discussed, unconstitutional removal restrictions are less malignant.  See Collins, 938 F.3d at 596 (Duncan, J., concurring).  Second, the constitutional violation has already been identified and fixed – at least prospectively – by severance.  If anyone should reap the benefit, it is Seila Law LLC, not Citizens.  Of course, providing a benefit to latecomers such as Citizens would provide an additional enticement, but to an excessive degree.  The Court concludes that a harsh remedy is not necessary to create proper incentives for future litigants.[9]

Arguably, the proper course of action would have been for the CFPB to wait until the Supreme Court's decision in Seila Law, and then file suit in this case.  But what is the continuing prejudice to Citizens from the CFPB's failure to do so?  Only that Citizens had to file its papers a few months earlier.  This injury does not necessitate dismissal with prejudice.

b.   Tolling Agreements

In its supplemental brief, Citizens makes the additional argument that the tolling agreements (apart from the lawsuit

---

[9] The Court also stated that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."  Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018) (citation and quotations omitted).  Here, though, the CFPB Director did not adjudicate anything.

itself) were also invalid due to the unconstitutionality identified in <u>Seila Law</u>.  Def.'s Suppl. Br. 17-20.  The CFPB disagrees, arguing that despite the removal provision the CFPB on the whole was constitutional and could therefore enter into tolling agreements.  <u>See</u> Oct. 20, 2020 Hr'g Tr. 43.[10]

As stated, for ratification to be effective, the ratifier must have the power "not merely to do the act ratified at the time the act was done, <u>but also at the time the ratification was made</u>." <u>NRA Political Victory Fund</u>, 513 U.S. at 98 (citation and quotations omitted).  In <u>NRA Political Victory Fund</u>, the FEC filed a petition for certiorari in one of its cases, despite the fact that the Solicitor General held the exclusive authority to do so.  <u>See id.</u> at 98-99.  After the ninety-day period to file the petition had elapsed, the Solicitor General attempted to ratify the FEC's petition, but the Court held that the ratification was too late. <u>See id.</u>

Here, absent the tolling agreements, the statute of limitations would have expired years ago.  Ratification of the

---

[10] At oral argument, Citizens repeatedly stated that the CFPB had conceded that the statute of limitations had run, and that the CFPB was arguing for the statute of limitations to be equitably tolled.  <u>See</u> Oct. 20, 2020 Hr'g Tr. 4-6, 8, 10, 18, 28, 49, 51 (citing Pl.'s Suppl. Br. 9, ECF No. 32).  But the Court does not interpret the single paragraph mentioning equitable tolling in the CFPB's brief to constitute such a concession.  <u>See</u> Pl.'s Suppl. Br. 9.  Moreover, at oral argument, the CFPB made its position clear: "[T]here is no need here for equitable tolling.  The [CFPB] satisfied the statute of limitation."  Oct. 20, 2020 Hr'g Tr. 30.

civil action is therefore predicated on the validity of those agreements.  The agreements themselves cannot be ratified because it would be nonsensical to toll an already expired deadline.  Thus, the survival of this case turns on whether the tolling agreements were rendered ineffectual by the unconstitutionality identified in Seila Law.  As discussed, the CFPB as an agency was not unconstitutional or powerless; rather its directorship was unlawful in certain respects.  The question, therefore, is whether an enforcement agency with an unconstitutionally insulated director can enter into a tolling agreement.[11]

This question must live on a spectrum.  On one end of the spectrum are the Bureau's decisions to bring civil enforcement actions, which Citizens described at oral argument as "the purest exercise of executive power[.]"  Oct. 20, 2020 Hr'g Tr. 26.  Due to the importance of these decisions to both the CFPB and defendants, such choices are imputed to the Director as "agent" of

---

[11] Citizens makes two assertions that do not require much discussion.  First, Citizens argues that the agreements cannot stand because "'contractual provisions made in contravention of a statute' and, a fortiori, the Constitution, 'are void and unenforceable . . . .'"  Def.'s Suppl. Br. 18 (quoting California v. United States, 271 F.3d 1377, 1383 (Fed. Cir. 2001)).  Similarly, Citizens contends that the agreements are void under administrative law because a court must set aside an agency action that is unconstitutional.  Id. (citing 5 U.S.C. § 706(2)(A), (B)).  But these arguments beg the question at issue, which is whether the removal provision of the CFPA infected the tolling agreements with unconstitutionality.

the CFPB, even where, as here, the Director's name does not appear on the Complaint itself.  See Compl. 12.[12]  Therefore, when an aspect of the directorship is declared unconstitutional, pending cases must be ratified by a constitutionally acceptable leader. See Legi-Tech, 75 F.3d at 708.  Moreover, certain circumstances render ratification incapable of remedying the harm.  See, e.g., Lucia, 138 S. Ct. at 2055; NRA Political Victory Fund, 513 U.S. at 98-99.

On the other end of the spectrum are the agency's ministerial tasks, for which ratification would be absurd.  For example, if a governmental agency leases office space, the building owner could not claim that the lease was void because the agency's director was unconstitutionally insulated from removal at the time the lease was signed.  Clearly, many of the smaller decisions involved in the CFPB's enforcement activities are not imputed to the Director.

A tolling agreement is a tool that both sides seek to use for their advantage.  The CFPB gains time to gather more information,

---

[12] Indeed, a CFPB policy manual seems to require its attorneys to receive approval from the Director prior to filing a civil action.  See Office of Enforcement, CFPB, Policies and Procedures Manual, 96, 125 (Oct. 5, 2017) (available at https://files.consumerfinance.gov/f/documents/201710_cfpb_enforc ement-policies-and-procedures-memo_version-3.0.pdf).  The Court does not cite this document as factual proof of the CFPB's policies or of the procedures that were followed in this case.  Rather, the Court references this document as support for the general idea that some decisions are more important than others and thus can be imputed to the Director.

and the subject of the investigation has the opportunity to negotiate a settlement, demonstrate good behavior, or otherwise convince the Bureau to drop the case. These agreements are on par in importance with motions filed in a case or substantive conversations between enforcement counsel and defense counsel. Such actions are important, but they pale in importance next to the decision to bring a complaint. The tolling agreements are mundane enough that they fall below the threshold at which they are imputed to the Director, and thus are not rendered void or unenforceable by Seila Law.

The tolling agreements are also protected temporally. In Seila Law, the Supreme Court made no indication that it was invalidating all the past actions of the CFPB. Sometimes, what's done is done. See, e.g., Buckley v. Valeo, 424 U.S. 1, 142 (1976) (stating that "past acts of the Commission are . . . accorded de facto validity" despite Appointments Clause violation). Though Seila Law calls into question all pending civil actions, forcing the CFPB to argue here for the saving grace of ratification, the Supreme Court did not hold that every antecedent action or decision need also be ratified.

For example, if the CFPB obtained the evidence necessary to bring a civil action through a pre-Seila Law CID, the case would not live or die based on ratification of that CID. This is true because the decision to bring the civil action was separate from

32

the decision to issue the CID.  Even though the two are related,
only the pending civil action itself requires post-severance
blessing.  In the same way, although the current suit is dependent
on the tolling agreements, the decisions to enter into the tolling
agreements and to bring the civil suit are distinct.  The decision
to sign the tolling agreements is not a pending matter – unlike
this case itself - and is therefore undisturbed by the Supreme
Court's holding in Seila Law.

     For these reasons, the Court concludes that the tolling
agreements are valid, and the suit was filed within the three-year
discovery deadline.  See 12 U.S.C. § 5564(g)(1).

     3.   Funding Structure

     Citizens next claims that the CFPB's funding structure is
unconstitutional.  The United States Constitution provides that
"No Money shall be drawn from the Treasury, but in Consequence of
Appropriations made by Law."  Art. I, § 9, cl. 7.  The Supreme
Court has "underscore[d] the straightforward and explicit command
of the Appropriations Clause.  It means simply that no money can
be paid out of the Treasury unless it has been appropriated by an
act of Congress."  Office of Pers. Mgmt. v. Richmond, 496 U.S.
414, 424 (1990) (citation and quotations omitted).

     The CFPB's core funding does not come from Congressional
appropriations.  Instead, the CFPB receives a portion of the
operating budget of the Federal Reserve, see 12 U.S.C. § 5497(a),

which, in turn, is funded by fees paid by financial institutions, see 12 U.S.C. § 243.

Over the past decade, both before and after <u>Seila Law</u>, litigants have argued that the CFPB's funding structure is unconstitutional.[13]  None has succeeded.  <u>See PHH II</u>, 881 F.3d at 95 ("The way the CFPB is funded fits within the tradition of independent financial regulators."); <u>CFPB v. Navient Corp.</u>, 3:17-CV-101, 2017 WL 3380530, at *16 (M.D. Pa. Aug. 4, 2017) (stating that CFPB's funding is not "constitutionally concerning"); <u>ITT Educ. Services, Inc.</u>, 219 F. Supp. 3d at 897 ("[Defendant's] conclusory assertion that the CFPA's funding structure violates the [Constitution is] without merit"); <u>CFPB v. Morgan Drexen, Inc.</u>, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) ("[T]he structure of the CFPB does not violate the Appropriations Clause."); Mot. Hr'g Tr. 58, <u>Law Offices of Crystal Moroney</u>, No. 7:20-cv-03240 (CFPB's funding structure "does not violate the appropriations and vesting clauses in the Constitution.").  In short, because the CFPB's funding does not come from the Treasury, there is no constitutional requirement that Congress control the yearly budget.  <u>See Am. Fed'n</u>

---

[13] In <u>Seila Law</u>, the Court stated that "[t]he CFPB's receipt of funds outside the appropriations process further aggravates the agency's threat to Presidential control."  140 S. Ct. at 2204. But this statement only concerned the constitutionality of the removal provision, not the constitutionality of the funding mechanism.  <u>See id.</u> at 2209 ("The only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal.").

of Gov't Emps., AFL-CIO, Local 1647 v. Fed. Labor Relations Auth.,
388 F.3d 405, 409 (3d Cir. 2004) ("Congress [may] loosen its own
reins on public expenditure.").   The CFPB's funding does not
violate the Appropriations Clause.

　　　4.   Pleading Defects

　　　Citizens claims two pleading defects in Counts I and II.
These counts allege that Citizens committed statutory violations
by requiring customers to substantiate reports of unauthorized use
with fraud affidavits signed at the penalty of perjury.

　　　　　a.   Staff Commentary

　　　First, Citizens argues that the CFPB impermissibly relies on
its staff commentary to Regulation Z, instead of the TILA statute
or Regulation Z itself, to make out a violation.   See Mot. to
Dismiss 28.   Regulation Z states that an issuer must conduct a
"reasonable investigation" in response to a written notice from
the cardholder of unauthorized use, but does not make clear whether
this requirement applies to reports of unauthorized use made by
telephone.   See 12 C.F.R. §§ 1026.12(b), 1026.13(f).   The
commentary, on the other hand, explicitly extends the requirement
to telephone reports.   See 12 C.F.R. pt. 1026, Supp. I, 12(b)(3).
Additionally, the staff commentary states that an issuer may not
"automatically" reject a report of unauthorized use based on a
cardholder's refusal to complete an affidavit, signed at the
penalty of perjury, to support the claim of unauthorized use.   12

C.F.R. pt. 1026, Supp. I, 13(f)(3).  The regulation itself makes
no mention of such affidavits.   12 C.F.R. §§ 1026.12(b),
1026.13(f).  Seizing upon these distinctions, Citizens argues that
the commentary lacks authority because public statements from the
CFPB and statements contained within the introduction to the
commentary characterize the staff commentary as mere guidance.
Def.'s Reply 16, ECF No. 20.

The Supreme Court, however, has foreclosed this argument.
"Unless demonstrably irrational, [] staff opinions construing
[TILA] or Regulation [Z] [are] dispositive."  Ford Motor Credit
Co. v. Milhollin, 444 U.S. 555, 565 (1980).  At the time of Ford
Motor, the CFPB did not exist, and the Federal Reserve Board was
authorized to issue regulations regarding TILA.  In 2010, Congress
transferred this authority to the CFPB, and the Federal Reserve
Board's staff opinions "were adopted in wholesale form, minus a
few technical changes . . . ."  Fridman v. NYCB Mortg. Co., LLC,
780 F.3d 773, 776 (7th Cir. 2015).  Since then, Courts of Appeals
have uniformly held that the staff commentary, now published by
the CFPB instead of the Federal Reserve, remains dispositive unless
demonstrably irrational.  See Curtis v. Propel Prop. Tax Funding,
LLC, 915 F.3d 234, 242 (4th Cir. 2019) (stating that courts "defer"
to the staff commentary (citing Ford Motor, 444 U.S. at 557));
Krieger v. Bank of Am., N.A., 890 F.3d 429, 436 n.3 (3d Cir. 2018)
("[A]s long as the agency's views are not demonstrably irrational,

36

we treat them as dispositive." (citations and quotations omitted)); Fridman, 780 F.3d at 776 (noting that the commentary may deserve even greater deference under the CFPB than it did under the Federal Reserve, but concluding that "for present purposes it is enough to say that [a certain part of the staff commentary] is not 'demonstrably irrational'").

Citizens makes no argument that the relevant sections of the staff commentary are demonstrably irrational; nor could it. The provisions at issue are logical extensions of the rules laid out in TILA and Regulation Z. Without a reasonable investigation, the requirement that banks refund unauthorized charges would be meaningless. Moreover, the prohibition against requiring affidavits at the penalty of perjury is entirely consistent with TILA's goal of "plac[ing] the risk of fraud primarily on the card issuer . . . ." Krieger, 890 F.3d at 434 (quoting DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co., 388 F.3d 886, 892 (D.C. Cir. 2004)).

The Complaint sets forth a plausible claim to relief by alleging non-compliance with the staff commentary.

        b.   Factual Sufficiency

Citizens next argues that even if non-compliance with the staff commentary is a valid basis for liability, Counts I and II fail to allege sufficient facts. Mot. to Dismiss 30. This argument falls short. The commentary provides, in part, that:

> [t]he card issuer may not automatically deny a claim
> based solely on the cardholder's failure or refusal to
> . . . provid[e] an affidavit[.] . . . The procedures
> involved in investigating claims may differ, but . . .
> a creditor may not require the cardholder to provide an
> affidavit . . . under penalty of perjury as part of a
> reasonable investigation.

12 C.F.R. pt. 1026, Supp. I, 13(f)(3).

The Complaint alleges that "Citizens's process permitted Bank employees to require consumers to complete the Fraud Affidavit provided by the Bank, and automatically deny the claim if the consumer failed to do so[,]" that "[d]ue to the language used in the Fraud Affidavit . . . and its notarization requirement, consumers' signatures . . . were subject to the penalty of perjury[,]" and that "[i]n numerous instances, Citizens automatically denied consumers' billing error notices and unauthorized use claims because those consumers refused to or were unable to complete the Fraud Affidavit."  Compl. ¶¶ 16, 18, 19.

Citizens argues that the use of the word "permitted" indicates that the rejection of the claims was not automatic.  See Mot. to Dismiss 27.  This contention misses the mark.  The allegation is not that Citizens required a fraud affidavit of every customer, but rather that in numerous instances, Citizens denied claims simply because the cardholder did not complete a fraud affidavit. Such denials violate the plain language of the staff commentary. See 12 C.F.R. pt. 1026, Supp. I, 13(f)(3).  Counts I and II were adequately pled.

5.   Enforcement of Regulation Z

Citizens next argues that the counts brought under the CFPA
fail to the extent that they rely on Regulation Z because the
regulation was initially promulgated by the Federal Reserve.  See
Mot. to Dismiss 30-31.  Indeed, the only regulations enforceable
under the CFPA are those "prescribed by the [CFPB]."  See 12 U.S.C.
§§ 5481(14), 5536(a)(1)(A).  The Dodd-Frank Act, however, provided
that "[a]ll consumer financial protection functions of the
[Federal Reserve] are transferred to the [CFPB]."  12 U.S.C. §
5581(b)(1)(A).  Pursuant to its newly obtained authority, the CFPB
in 2011 republished Regulation Z as an interim final rule for
public comment.  See Truth in Lending (Regulation Z), 76 Fed. Reg.
79768 (Proposed Dec. 22, 2011).  In 2013, the CFPB published the
final version of Regulation Z.  See Truth in Lending (Regulation
Z), 78 Fed. Reg. 76033 (Dec. 16, 2013).  This republished version
of Regulation Z clearly was "prescribed" by the CFPB.  The Bank's
argument ignores clear congressional intent and, if successful,
would upend an entire regulatory system.  Violations of Regulation
Z are actionable under the CFPA.

6.   Categories of Relief

Lastly, Citizens contends that certain types of relief sought
by the CFPB are unavailable because the Complaint does not allege
facts sufficient to support those forms of relief.  Mot. to Dismiss
32-35.  This argument fails.

First, the Bank argues that injunctive relief is unavailable because the Complaint alleges no ongoing violations.  However, "it need not appear that the plaintiff can obtain the <u>specific</u> relief demanded as long as the court can ascertain from the face of the complaint that <u>some</u> relief can be granted."  <u>Doe v. U.S. Dep't. of Justice</u>, 753 F.2d 1092, 1104 (D.C. Cir. 1985).  Thus, "a motion to dismiss is not a proper vehicle for addressing a prayer for relief, which is not part of the cause of action."  <u>Reininger v. Oklahoma</u>, 292 F. Supp. 3d 1254, 1266 (W.D. Okla. 2017).[14]  Here, the Complaint clearly makes out a basis for at least <u>some</u> relief for each count.  <u>See</u> Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  It is no matter that certain types of requested relief arguably do

---

[14] Hence, it is unsurprising that most of the cases cited by Citizens do not concern motions to dismiss.  <u>See</u> <u>Davis v. Fed. Election Comm'n.</u>, 554 U.S. 724, 732 (2008) (summary judgment); <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 167 (2000) (same); <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 100 (1983) (preliminary injunction); <u>SEC v. Sargent</u>, 329 F.3d 34, 39 (1st Cir. 2003) (question of post-trial relief); <u>Donahue v. City of Boston</u>, 304 F.3d 110, 115-16 (1st Cir. 2002) (summary judgment); <u>SEC v. Pros Intern., Inc.</u>, 994 F.2d 767, 768 (10th Cir. 1993) (same); <u>SEC v. Slocum, Gordon & Co.</u>, 334 F. Supp. 2d 144, 185 (D.R.I. 2004) (question of post-trial relief); <u>SEC v. Mellert</u>, C03-0619 MHP, 2006 WL 927743, at *1 (N.D. Cal. Mar. 29, 2006) (question of civil penalty based on criminal conviction). In the only three cited cases dealing with motions to dismiss, the actions were dismissed in their entirety due to the plaintiffs' failure to make out any claim for relief.  <u>See</u> <u>SEC v. Gentile</u>, 939 F.3d 549, 552-53, 566 (3d Cir. 2019); <u>U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister</u>, 626 Fed. Appx. 528, 529 (5th Cir. 2015); <u>Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.</u>, 487 F. App'x 362, 362-63 (9th Cir. 2012).

not have a factual basis.  This dispute is one for summary judgment or trial.

Second, the Bank argues that undisputed facts (outside of the Complaint) establish that all affected customers have been reimbursed, and that demands for damages, restitution, refunds, or disgorgement should therefore be stricken from the Complaint.  See Mot. to Dismiss 33-35.  Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Such motions "are generally disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  DeMoulis v. Sullivan, CIV. A. 91-12533-Z, 1993 WL 81500, at *6 (D. Mass. Feb. 26, 1993) (citation and quotations omitted).

Here, Citizens states that the CFPB is "well aware that they seek monetary remedies for customers who already received payments from the Bank." Mot. to Dismiss 34.  Again, this contention involves factual issues that must be resolved at summary judgment or trial.  There is no cause to strike material from the Complaint at this time.

IV.  Conclusion

     For the reasons stated herein, the Motion to Dismiss, ECF No.

14, is DENIED.


IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  December 1, 2020